**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**UNITED STATES OF AMERICA**

**vs.**                                                    **CASE No. 3:07cr58/MCR**

**DAVID SCHIMMEL**

_____

**RESPONSE TO DEFENDANT SCHIMMEL'S MOTION TO SUPPRESS EVIDENCE**

COMES NOW, the United States of America, by and through the undersigned Assistant United States Attorney, and responds to the defendant Schimmel's motion to suppress evidence, and states:

1.      On April 5, 2007, law enforcement officers searched the residence at 133 N. Audrey Circle, Fort Walton Beach, Florida, pursuant to a search warrant issued by Federal Magistrate Elizabeth Timothy. (attached)  Law enforcement officers seized marijuana, wrappings, a firearm and other incriminating items at the residence (See search warrant return contained in attachment).

2.      The affidavit in support of the search warrant was prepared by DEA Agent Michael Clear and outlined his prior experience and training in narcotics trafficking investigations for approximately nine years.

3.      The affidavit established probable cause for the issuance of the warrant as well as the nexus between the residence at 133 N. Audrey Circle and the criminal activity described within the warrant by providing the following information:

a.      The DEA received information in the fall of 2006 that the defendant was

acquiring marijuana from the McAllen, Texas area, distributing the drug in the Fort Walton area and was utilizing a residence in Fort Walton as a storage and distribution point for the marijuana.

b.      A database for Florida driver's license and vehicle information listed the defendant as residing at 133 N. Audrey Circle.

c.      Late in the evening on March 14, 2007, law enforcement officers observed a white Ford utility truck (a blue container was observed in the bed of the truck) bearing Texas tag # 9KT-W71 depart 133 N. Audrey Circle while being driven by David Schimmel's father, Colin Schimmel.  The truck is registered to David L. Schimmel with an address listed as 818 S. Ivey Drive, McAllen, Texas.  Officers maintained surveillance of the truck until the Wilcox Road exit in Alabama while it traveled west on Interstate 10.

d.      Intermittent surveillance of 133 N. Audrey Circle was conducted between March 14, 2007 and April 2, 2007, and the white truck described above was not seen at the residence.

e.      On April 2, 2007, law enforcement officers stopped the white truck described above after observing a traffic infraction.  The truck was stopped while westbound approximately two blocks from the intersection of Sullivan Street and Audrey Circle and traveling in the direction of Audrey Circle.  The driver of the truck was identified as Louis Gagnon and he presented a Texas driver's license.

f.      A drug dog was deployed around the truck and alerted to the presence of a controlled substance in the rear of the truck near blue colored tanks.  A search of the tanks resulted in the seizure of a large quantity of cocaine (approximately 52 kilograms) and marijuana (approximately 460 pounds).

g.     On April 4, 2007, an informant told the DEA that he/she, approximately 6 to 8 months prior to April 4, 2007, had been paid $3000 by David Schimmel to help unload a red tank containing approximately 300 pounds of marijuana from a white Ford utility truck in the backyard of 133 N. Audrey Circle, Fort Walton Beach.

h.     The informant stated that he had been present on two other occasions over a year period when he assisted David Schimmel in off-loading bulk quantities of marijuana received by Schimmel at 133 N. Audrey Circle.

i.     The informant described an area in the back yard at 133 N. Audrey Circle that was used to conceal bulk quantities of marijuana and that David Schimmel had supervised the construction of this "underground bunker" during the summer of 2006.

j.     The agent summarized his experience and training establishing that it is common for drug dealers to hide contraband or illegal proceeds or records of drug transactions within or in close proximity to their residence.  The agent noted that the large quantity of drugs seized from the truck registered to David Schimmel had a street value exceeding one million dollars.  This fact indicated a significant distribution operation capable of generating large profits to the affiant and, based on his training and experience, an operation that would result in the generation of records regarding those profits as well as the presence of drugs, currency, financial instruments and evidence of financial transactions related to large sums of "drug" money being obtained, transferred, hidden or spent.

k.     In his affidavit, the agent summarized the type of evidentiary items, in addition to contraband, that would likely be present at the residence of a drug trafficker, including:

1) electronic devices utilized to contact co-conspirators that could contain

3

identifying information regarding possible co-conspirators;

2) documentary evidence containing notes, telephone numbers, letters and bills documenting the communications and criminal activities of the target and his associates as well as documents indicating occupancy, residency or ownership of the premises described in the warrant as well as photographs, recordings on telephone messages in recording machines and any video recordings from the exterior surveillance system visibly located on the outside of the residence.

3)    firearms, weapons, any computer and electronic data stored therein and computer hardware and software and paraphernalia.

## MEMORANDUM OF LAW

### NEXUS

Defendant contends that there is no "nexus" between the criminal activity described in the affidavit and the residence at 133 N. Audrey Circle.  Defendant's recitation of the "facts" in the affidavit omits or seeks to limit important considerations linking the residence to the criminal activity described.

The court issuing the search warrant was presented with facts establishing:

1)    that the DEA had received information in the fall of 2006 that David Schimmel was acquiring marijuana from the McAllen, Texas, area (the white truck registration in Schimmel's name listed an address in McAllen, Texas) and distributing the drug in the Fort Walton area while utilizing a residence in Fort Walton as a storage and distribution point for the marijuana (events corroborated by information received from a informant on April 4, 2007);

4

2)      that law enforcement had observed a certain white Ford utility truck being driven by David Schimmel's father depart 133 N. Audrey Circle on March 14, 2007, and travel westbound on Interstate 10;

3)      that this same truck was stopped on April 2, 2007, while headed in the direction of and a short distance away from 133 N. Audrey Circle;

4)      that this same truck contained approximately 52 kilograms of cocaine and 460 pounds of marijuana, with a street value of over one million dollars;

5)      that this same truck was registered to David Schimmel;

6)      that on April 4, 2007, an informant had stated that, six to eight months prior to the seizure of the drugs from the white truck, he had been paid $3000 by David Schimmel to help unload a red tank (containing approximately 300 pounds of marijuana) from a white Ford utility truck owned by David Schimmel in the backyard of 133 N. Audrey Circle;

7)      that the same informant stated that, over a year period, he had been present on two other occasions and assisted David Schimmel in off-loading bulk quantities of marijuana received by Schimmel at 133 N. Audrey Circle;

8)      that the same informant described an area in the back yard at 133 N. Audrey Circle that was used to conceal bulk quantities of marijuana (the type quantity recovered on April 2, 2007 from the truck stopped a short distance away from 133 N. Audrey Circle and  registered to David Schimmel) and that David Schimmel had supervised the construction of this "underground bunker" during the summer of 2006.

The question of whether there is sufficient nexus between the items sought and the place to be searched is answered by examining the "totality of the circumstances."

The Supreme Court has explained that the task of the issuing magistrate judge [in determining whether to issue a warrant] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place: See Illinois v. Gates, 462 U.S. 213, 238 (1983); United States v. Cross 928 F.2d 1030 (11th Cir. 1991); United States v. Jenkins, 901 F.2d 1075 (11th Cir. 1990), cert. denied, 111 S.Ct. 259 (1990). Indeed, "the nexus between the objects to be seized and the premises searched can be established from the particular circumstances involved and need not rest on direct observation." Jenkins, 901 F.2d 1080 (citing United States v. Lockett, 674 F.2d 843, 846 (11th Cir. 1982)); United States v. Fannin, 817 F.2d 1379, 1382 (9th Cir. 1987) (direct evidence that contraband or evidence is at a particular site is not essential to establish probable cause to search a location).

The search warrant in question was a warrant for not only contraband but certain other kinds of property and documents--not just for illegal drugs.  The specified items to be seized, described in Attachment B to the Application and Affidavit for Search Warrant, included (1) drug records; (2) documents reflecting identities of co-conspirators; (3) financial documents; (4) documents indicting use, access or control of the premises; and (5) photographs.  The affiant's affidavit establishes that the nature of drug trafficking offenses includes keeping records and documents which will frequently be held over time--even after the crimes at issue are completed.  Although evidence of a murder, for example, will presumably be quickly and relatively easily disposed of, evidence of one's participation in drug dealing--names, telephone numbers, telephone

6

records, addresses, ledgers--may be much more difficult to get rid of, requiring a thoroughness and discipline that few people possess.

In deciding whether probable cause exists to search a particular site, courts have traditionally permitted a police officer's expertise to guide their determination.  Jenkins, 901 F.2d at 1081.  This is particularly true where, as it is here, an affiant's expertise is based upon his practical knowledge in a particular area.  The affiant in this case, DEA Agent Mike Clear, had demonstrated his experience in the investigations of drug traffickers, including the execution of search warrants resulting in the seizure of illegal narcotics and financial documents. (Paragraph 2 of Affidavit)  Agent Clear's expertise included knowledge that drug dealers often maintain large amounts of cash and maintain documents relating to drug distribution. (Paragraph 2 of Affidavit).

In recognizing the expertise developed by law enforcement officers, courts consider, as part of the warrant application, police knowledge of the patterns followed by certain types of criminals.  See Cross, 928 F.2d at 1040 (court's determination of probable cause included officer's evaluation of location of evidence based upon experience in investigations of child pornography); Jenkins, 901 F.2d at 1081 (F.B.I. agent, experienced in bank robberies, stated likely hiding place for stolen goods was defendant's home); see also United States v. Hernandez-Escarsega, 886 F.2d 1560, 1567 (9th Cir. 1989), cert. denied, 497 U.S. 1003 (1990) (agent's expert opinion that drug dealers "customarily maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale and distribution of controlled substances" included in magistrate's probable cause determination); United States v. Fannin, 817 F.2d 1379, 1382 (9th Cir. 1987) ("[i]n the case of drug dealers, evidence is likely to be found where the dealers live"); United

<u>States v. Young,</u> 745 F.2d 733 (2d Cir. 1984), <u>cert</u>. <u>denied</u>, 470 U.S. 1084 (1985) (permitting agent's assessment that "it is common for narcotics dealers to keep records and other evidence of their businesses in their home").  As the D.C. Circuit has stated, "observations of illegal activity occurring away from the suspect's residence, can support a finding of probable cause to issue a search warrant for the residence, if there is a reasonable basis to infer from the nature of the illegal activity observed, that relevant evidence will be found in the residence." <u>United States v. Thomas,</u> 989 F.2d 1252, 1255 (D.C. Cir. 1993). Cf. <u>United States v. Green</u>, 634 F.2d 222 (5th Cir. Unit B 1981)(no probable cause for search of Florida residence where all criminal activity took place in California).

Agent Clear's affidavit was sufficient to establish the nexus between the criminal activity under investigation and the residence to be searched.  "It is reasonable to assume that certain types of evidence would be kept at a defendant's residence and an affidavit need not contain personal observations that a defendant did keep such evidence at his residence." <u>United States v. Reyes,</u> 798 F.2d 380, 382 (10th Cir. 1986); see <u>United States v. Williams,</u> 974 F.2d 480 (4th Cir. 1992) (affidavit clearly established that Williams was a drug dealer and that he was residing in motor lodge; magistrate's finding of probable cause for search of room in motor lodge upheld and district court's order granting suppression motion reversed).

The government notes that the Eleventh Circuit has cautioned that probable cause may not be based merely upon the "isolated word of an experienced [narcotics detective]." <u>Jenkins</u>, 901 F.2d at 1081.  However, in the instant case, Agent Clear's expertise on the modus operandi of drug dealers was only one of the factors available for the magistrate's determination. See <u>Jenkins</u>, 901 F.2d at 1081 (where the "isolated

8

word" of an experienced investigator would not suffice on its own, but when viewed in conjunction with other information provided in the affidavit, probable cause was established); and list of factors set forth on pages 4 and 5 of this pleading.

Under the totality of the circumstances, there was a substantial basis for the magistrate's conclusion that there existed a "nexus" between the criminal activity being investigated and the premises to be searched.

**STALENESS**

Defendant contends that the information presented in Agent Clear's affidavit is too "stale" to establish probable cause. Certainly, the "[i]nformation [in the warrant application] must be timely for probable cause to exist, for probable cause must exist at the time the magistrate judge issues the search warrant." United States v. Green, 40 F.3d 1167, 1172 (11th Cir.1994) (quoting United States v. Harris, 20 F.3d 445, 450 (11th Cir.1994)).

However, there is no particular rule or time limit for when information becomes stale. See Harris at 450 ("When reviewing staleness challenges we do not apply some talismanic rule which establishes arbitrary time limitations."); United States v. Bascaro, 742 F.2d 1335, 1345 (11th Cir. 1984)("No mechanical test exists for determining when information becomes fatally stale").  Rather, "staleness is an issue which must be decided on the peculiar facts of each case." Bascaro at 1345. [1]

---

[1]  The courts are not without guidance, however. In addition to the length of time, courts should consider the "nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched." See Harris *at 450; see also* United States v. Haaimowitz, 706 F.3d 1555, (11th Cir. 1983) ("In general, the basic criterion as to the duration of probable cause is the inherent nature of the crime."). For example, the former Fifth Circuit

However,  the "basic criterion as to the duration of probable cause [or staleness] is the inherent nature of the crime." United States v. Bascaro, 742 F.2d 1335, 1345 (11th Cir.1984).  In the instant case, the Defendant was being investigated for drug trafficking activities--which are activities that the Eleventh Circuit has  noted to be "inherently protracted and continuous." See Bascaro at 1346. Thus, the specific dates that the Defendant engaged in the illegal activity are not as important as the nature of the underlying offense in determining the staleness issue.

Additionally, even if were assumed that the information from informants was stale information, "such information is not fatal where the government's affidavit updates, substantiates, or corroborates the stale material." United States v. Green, 40 F.3d 1167, 1172 (11th Cir.1994) (quoting United States v. Harris, 20 F.3d 445, 450 (11th Cir.1994)). Certain facts presented in the affidavit contemporized and corroborated the information from the informants that the Defendant had been--and was--engaged in drug trafficking at the time the warrant was issued.

The information relating to the Defendant's past drug trafficking activity , corroborated by the recent information obtained during the surveillance of the truck registered to the defendant and the stop of that vehicle in close proximity to the

---

held that four-month-old reports of projectiles in the walls and floors of a dwelling as a result of the test-firing of the murder weapon were not stale because the "floors and walls of a house are relatively permanent fixtures and would not likely be subject to removal over the period of four months." United States v. Diecidue, 603 F.2d 535, 560 (5th Cir. 1979). In considering the nature of the crime, the appellate courts have distinguished between criminal activity which is protracted and continuous and that which is isolated. See United States v. Bascaro, 742 F.2d 1335, 1345-46(11th Cir. 1984) ( The circuit courts hold that where an affidavit recites a mere isolated violation then it is not unreasonable to believe that probable cause quickly dwindles with the passage of time. On the other hand, if an affidavit recites activity indicating protracted or continuos conduct, time is of less significance).

defendant's residence as well as the seizure of large quantities of illegal drugs from that truck, indicated to the federal magistrate  there was a fair probability that the Defendant was involved in illegal activity and that evidence of that activity would be found at the residence at 133 N. Audrey Circle . Accordingly, the search warrant was supported by probable cause and the evidence seized during the search was properly obtained by law enforcement.

## GOOD FAITH AND LEON

Even if the federal magistrate judge's determination that probable cause existed was erroneous, the Court should not suppress evidence seized by the agents acting in objective good faith reliance on a facially valid search warrant. See United States v. Leon, 468 U.S. 897, 919-20 (1984).  Leon stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a facially valid search warrant that is ultimately found to be unsupported by probable cause or otherwise invalid.  The Leon good faith rule applies in all but four limited sets of circumstances. Id. at 923.

The four sets of circumstances are set forth in United States v. Martin, 297 F.3d 1308, 1313 (11th Cir. 2002) as follows:

(1) where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth";

(2) "where the issuing magistrate wholly abandoned his judicial role in the manner condemned in" Lo-Ji Sales, Inc. V. New York, 442 U.S. 319, 99S.Ct. 2319, 60 L.Ed.2d. 920 (1979);

11

(3) where the affidavit supporting the warrant is "so lacking in indicia of probable

cause as to render official belief in its existence entirely unreasonable"; and

(4) where, depending upon the circumstances of the particular case, a warrant is

"so facially deficient--i.e., in failing to particularize the place to be searched or the

things to be seized--that the executing officers cannot reasonably presume it to be

valid."

None of these circumstances apply here, and as such, the evidence seized

during the execution of the warrant should not be suppressed.  There are no facts

presented, or alleged, that even remotely suggests the agent presented false evidence,

or that the federal magistrate judge abandoned her judicial role in finding probable

cause.  The warrant and/or the affidavit are not so facially deficient as to make them

unworthy of objective reliance by law enforcement.  To the contrary,  the affidavit is very

detailed as to the historical information received regarding the defendant's drug

trafficking and involvement in a drug conspiracy as well as references to specific recent

evidence that established probable cause that 133 N. Audrey Circle had a nexus to the

drug offense and that items of contraband and evidence would be located therein.

Notwithstanding the fact that the affidavit contained sufficient probable cause to

sustain the issuance of the search warrant, there is no question here that Agent Clear

acted in good faith.  "Under Leon, the magistrate judge's determination of probable

cause is not the issue, but rather whether the officers executing the warrant relied on

that determination." United States v. Glinton, 154 F.3d 1245, 1257 (11th Cir. 1998), cert

denied, __ U.S. __, 119 S.Ct. 1281(1999).

The purpose of the exclusionary rule is to deter unlawful police misconduct;

therefore, when officers engage in "objectively reasonable law enforcement activity" and have acted in good faith when obtaining a search warrant from a judge or magistrate, evidence seized pursuant to the warrant may not be suppressed.  Leon, 468 U.S. at 919-20.

Stated differently, this Court should not conclude that Agent Clear was "required to disbelieve a judge who has just advised him, by word and action, that the warrant he possesses authorizes him to conduct the search he has requested." See Massachusetts v. Sheppard, 468 U.S. 981, 989-90, 104 S. Ct. 3424, 3428 (1984).

"Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations." United States v. Miller, 24 F.3d 1357, 1361 (11th Cir. 1994).

WHEREFORE, the United States respectfully request that this court deny the motion to suppress evidence.

Respectfully submitted,

GREGORY R. MILLER
United States Attorney

*/s/ Edwin F. Knight*

EDWIN F. KNIGHT
Assistant United States Attorney
Florida Bar No. 0380156
21 East Garden Street, Suite 400
Pensacola, FL  32502-5675
(850)444-4000

13

**RULE 7.1(B) CERTIFICATE**

I HEREBY CERTIFY that counsel for Defendant David Schimmel, Leo Thomas, has been notified regarding the government's objection to the motion to suppress evidence.

*/s/ Edwin F. Knight*
EDWIN F. KNIGHT
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing motion has been furnished by electronic notice via CM-ECF to Leo Thomas, Attorney for David Schimmel, on this <u>24th</u> day of May, 2007.

*/s/ Edwin F. Knight*
EDWIN F. KNIGHT
Assistant United States Attorney

14