**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**UNITED STATES OF AMERICA**

**vs.**                                             **3:07cr58/MCR/MD
                                                     3:10cv201/MCR/MD**

**DAVID LEE SCHIMMEL**

_____

## REPORT AND RECOMMENDATION

     This matter is before the court upon defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (doc. 246).  The government has filed a motion to dismiss the motion as untimely (doc. 257) and the defendant has responded (doc. 259).  The court held an evidentiary hearing on February 15, 2011, and counsel for the defendant subsequently filed a "Notice of Correction of Cited Authority," which appears on the electronic docket as a "trial brief." (Doc. 283).

## FACTUAL BACKGROUND and EVIDENCE

     Defendant David Lee Schimmel was convicted after a jury trial of conspiracy to possess with intent to distribute 5 kilograms or more of cocaine and 1000 kilograms or more of marijuana in violation of 21 U.S.C. § 846.  He was sentenced to a term of life imprisonment.  He appealed, and his conviction and sentence were affirmed on January 30, 2009.  The mandate issued on March 3, 2009. (Doc. 193).  He did not file a petition for writ of certiorari, and the time for doing so elapsed on June 1, 2009.

Defendant filed a motion to vacate, set aside or correct sentence that was received by the clerk on June 8, 2010. (Doc. 246). Because the court recognized that the timeliness of the motion might be at issue, it reviewed the motion and noted that the date the defendant purportedly signed his § 2255, April 13, 2010, was nearly two months prior to the date it was received by the clerk. The court therefore entered an order directing the defendant to explain the seeming discrepancy, if he could. (Doc. 248). Defendant submitted a statement in which he again stated, under oath, that he had turned in the motion for mailing on April 13, 2010.[1] (Doc. 250 at 3, 4). Based on the defendant's assertion, the court directed the clerk to serve the motion. (Doc. 256).

The government moved to dismiss the defendant's motion as untimely and requested an evidentiary hearing. (Doc. 257). The defendant responded, and he indicated that he would stand by his declaration and certificate of service. (Doc. 259 at 2). The court scheduled an evidentiary hearing and appointed the office of the Federal Public Defender to represent the defendant. (Doc. 260). Before the hearing, attorney Albert Oram filed a motion to continue and various discovery motions. (Doc. 263, 264, 272, 273, 275). The court initially allowed some discovery, but when the defendant made a second request for discovery it denied the request, reasoning that based upon the record and the position taken by the defendant thus far, the issue was actually limited to the date the defendant filed his motion pursuant to the prison mailbox rule. (Doc. 281 at 2). In light of the defendant's unwavering position in his sworn submissions to the court that he presenting his motion to prison authorities for mailing on April 13, 2010 the matters sought to be discovered were irrelevant. (Doc. 281).

---

[1]Defendant further stated in his statement that this was 17 days before the deadline for filing the motion. (Doc. 250 at 3).

At the hearing conducted on February 15, 2011, the government called two witnesses.  The first witness was Craig Thomas, corrections systems officer at Pollack, whose job includes processing incoming and outgoing mail for the whole institution.  When asked about the mail procedures at the institution, Mr. Thomas explained that ordinary inmate mail was dropped in drop boxes in each housing unit. Mail that was placed there would be mailed the next morning when staff went to the post office.  Alternatively, inmates could bring the mail to staff between 6:00 and 7:30 a.m.  After verifying the inmate's identification card, the staff would put a date on the outgoing mail and it would be taken to the post office.  Mr. Thomas explained that only mail identified as legal mail was dated, and only certified mail was recorded in a log.

The witness identified government's exhibit one as part of a mail log which reflected mail that was received from the defendant for mailing on November 16, 2009.  Mr. Thomas explained that when the prisoner brings an item for certified mailing, the back of the envelope is stamped and he helps the inmates fill out the certified mail slip.  The next day the inmate gets the slip back, which shows proof that the item was mailed.  The mailboxes in the housing unit are for general correspondence.  If inmates have a piece of "special mail" going to the courts, they have to bring it to the appropriate staff who will turn it over and stamp it with the date. Otherwise it is just considered general correspondence. General mail is pulled from the housing unit mail boxes by the overnight officers.  It is inspected and sealed and placed into the bag for the housing unit.  This goes up to the central mail location at 5 a.m. Because it has already been inspected, it goes to the post office the same day.  The general mail is pulled every morning through the week, but Mr. Thomas indicated that his office is closed on the weekend, so any mail deposited on Friday, Saturday or Sunday would not go out until the following Monday.

The AUSA showed Mr. Thomas government's exhibit 2, which was a copy of the envelope in clerk's file attached to document 246, the 2255 bearing a postmark of June 7, 2010, which was a Monday.  Mr. Thomas stated that he had not seen the

exhibit previously, but testified that based on the procedures then in place, the earliest that the envelope could have been placed in the prison mail system was Friday, June 4, 2010.  If defendant had mailed the envelope on that Friday it would not have been mailed until the following Monday.

On cross examination Mr. Thomas testified that he had no personal knowledge of the envelope being mailed or of Mr. Schimmel's circumstances.  He reiterated that a log is kept for certified mail, and that while no other mail has a log, "special mail" is turned over and date stamped.

Mr. Thomas acknowledged that Pollack is a high security facility and has been in lockdown frequently.  When asked about violence at the institution, he estimated that there had been probably ten murders since 2000, but said he could not recall if one took place between March 2009 and June 2010.  He conceded that defendant's exhibit 4 reported that a murder had occurred in January of 2010 and that the inmates were on lookdown at that time.   The mailboxes for general mail are inaccessible to inmates during lockdowns.  Therefore, during a lockdown, Thomas explained that inmates must put their outgoing mail through a slot in their cell door.  The night officer retrieves it, inspects it, and puts it in the mail.  Thomas calls the units during lockdown to see whether there is any special mail that needs to be picked up and processed separately, which he does rather than returning the mail to the inmate.  Defense counsel asked whether the defendant's § 2255 could have been delivered to someone else earlier than the postmark date and Thomas said that no, if it had been delivered to staff earlier it would have been postmarked earlier.

On re-direct Mr. Thomas testified that the mail would not spend days in the review process, that an officer would merely read the envelope and scan its contents.  He also explained that even during times of lockdown, the prisoners are not prevented from sending mail.  He has to walk around and collect the mail, but otherwise, the procedures are the same.  Mailing special mail still requires that the envelope be sealed and the inmate show identification in order to mail it.  Thomas examined government's exhibit 2, the envelope carrying defendant's § 2255 motion,

and stated because it did not have a date stamp on it, it went out through the housing unit as general correspondence.

The next witness was Gordon Lewis, a Special Investigative Agent at FCC Pollack who heads the entire investigation department. He testified that his office becomes involved whenever a prisoner comes under investigation, whether it is an external or internal investigation. When asked what effect an investigation had on an inmate's ability to send mail, he stated that it depended on the offense. If the alleged offense involved a threat, the inmate would be subjected to mail monitoring. Under this condition, the inmate's mail would be picked up in the morning, reviewed, and sent out in the afternoon, so there was no delay in the mail process.

On cross-examination, Mr. Lewis stated that he had no personal knowledge of any investigations of defendant Schimmel. He conceded that human error is a possibility in the handling of mail. When asked whether mail could be kept for several days, he responded that such an occurrence was not error, that would be misconduct.

At the conclusion of Mr. Lewis's testimony, the defendant stated that he had no evidence to present. Defense counsel then moved to dismiss the government's motion, arguing that the government bears the burden to produce evidence to show the date the motion was mailed, and it had failed to do so. *Washington v. United States*, 243 F.3d 1299 (11th Cir. 2001) (citing *Harvey v. Vaughan*, 993 F.2d 776, 781 (11th Cir. 1993)). In response, the government did not dispute that it had the burden of proof. It argued that based on the evidence presented about how the mail is handled and the specific procedures for mailing general and special mail, the date of actual mailing was narrowed down to June 4, 5 or 6. This court orally denied the motion to dismiss the government's motion, finding that the testimony established that based on procedures followed in the ordinary course of business, the government had established by a preponderance of the evidence that the mail had to have been placed in the prison mail system no earlier than June 4, 2010, regardless of the date on the defendant's motion. It further found that because the

envelope in question was mailed through the general mail, there existed no specific record with respect to that piece of mail, although there were procedures in place, of which the defendant had availed himself on at least one other occasion, to create a record of when the motion was given to prison authorities for mailing. Thus the government could not be faulted for its failure to provide specific proof of the date of mailing, when it was defendant's choice of how he mailed his document that created this lack of record in the first place. The court then alluded to the matters raised in the discovery motion with respect to the issue of equitable tolling and pointedly noted that in order to do equity, the one seeking equity cannot come forward with unclean hands.

Based on the court's ruling, after consultation with his client, defense counsel moved to re-open the evidence so the defendant could testify. Although not obligated to do so, the court allowed the evidence to be re-opened to see if defendant could shed additional light on the matter.

Defendant testified that he is currently housed at USP Pollock, which is a high security facility. He stated that it is a hostile environment, where inmates are housed in 2 man cells, with 120 cells per unit and 2 units on the compound. Defendant said he filed his § 2255 motion after one and a half years of spending 4 to 8 hours per day in the law library. He stated that while his case was on appeal, his appellate counsel did not return his calls, but sent him a copy of the appellate brief, rebuttal and reply after they were filed. The defendant opined that they were far from adequate, so even before his conviction was affirmed he started researching to file his § 2255. He did this by going to the law library and using Lexis/Nexis and word processing. He explained that inmates can be issued a single screen word processor to take back to their cells because they are not permitted to save anything on the computers at the law library. The word processors are issued for sixty days at a time, but he was able to keep it the whole time he was working on this by renewing his request after the time period expired. Defendant testified that he could not go to the law library every day because the institution was frequently on

lookdown.  He estimated that he was on lookdown for two months during the first half of 2010.  He stated that he finished preparing the § 2255 motion in late February or early March, but does not remember a specific date.  He explained that in order to print his fourteen page motion, he had to take the word processor to the computer lab, request a USB cable to download and format the document,  format one page at a time, and obtain a copy card to for printing.  According to the defendant, this process took about 1-2 days per page because he only was permitted 1 ½ - 2 hours in the lab at a time.  After printing he had to purchase stamps and purchase an envelope.  He estimated that he printed the motion at the end of March or first week of April, after which he had to go somewhere else on the compound to make copies.  Again he stated that this process took more than a day, and probably took him until approximately late March or early April.   Defendant acknowledged that the motion was dated on April 13, but he appeared to hesitate and could not recall which day he actually signed it, but probably a couple days before.  When asked why he signed it "a couple days before," he said that the declaration was not he last page he prepared because of the format, and that he had planned on mailing it the 13th or 14th of the following week.  Defendant repeatedly stated that the pages of the motion were not printed in sequence.

Defendant testified that he did not take the motion to the mailroom, that he slid it under the door while on lookdown.  Again, he was very equivocal or even evasive about when this happened, and despite the certificate of service on the motion, says that he does not remember exactly when this was.  Defendant testified that he thought he had to mail the §2255 by mid-May, but he was not sure of the exact deadline.

Defendant also testified about how there are sometimes delays in the receipt of mail.  He noted that an order from this court took nine days to arrive, and the defense introduced exhibit 3, an inmate request form which verified that defendant had not received a court order dated October 26, 2010 until November 4, 2010, eight days later.

*Case No: 3:07cr58/MCR; 3:10cv201/MCR/MD*

Page 8 of 12

On cross examination defendant testified that he had "no other choice" but to put the § 2255 in the general mail because he was unaware that he could ask for legal mail to be sent thru legal mail channels during a lockdown, even though he had used these procedures at least one other time.[2]   Defendant  said he had never experienced legal mail being sent or certified while on lookdown, but he did not say he ever inquired about this.  In contradiction to the sworn certificate of service on the motion, he stated that he signed the motion "a couple days before" April 13 and provided it to prison authorities for mailing a couple of days before that date as well. Subsequently he had his mother call the court to see if it had been received.  When asked what he did when he found out that the court had not received his motion by June 1, 2010, he denied having been made aware of that.  He claimed he did not learn the date it was filed until he got the order asking him to clarify the discrepancy between the certificate of service and the postmark.  He conceded that because he did not use the legal or special mail procedure, the only evidence that the petition was filed timely is his own testimony.  The defendant said he tried through discovery to get his emails and phone records to show his concern about the timeliness of his motion.

## ANALYSIS

Title 28 U.S.C. § 2255(f) imposes a one year time limitation on the filing of motions under this section. The one year period of time runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the petitioner was prevented from making a motion by such governmental action;

---

[2]In November of 2009, defendant filed a motion with the court asking the court to direct the court reporter to prepare transcripts.  (Doc. 217).  He explained that he sent this via the legal mail procedures because the court reporter had not responded to his previous requests.

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2255. The mandate in defendant's case issued on March 3, 2009. In cases where a defendant has appealed, the judgment of conviction becomes final within the meaning of § 2255 as follows: (1) if the prisoner files a timely petition for certiorari, the judgment becomes "final" on the date on which the Supreme Court issues a decision on the merits or denies certiorari, or (2) the judgment becomes final on the date on which the defendant's time for filing such a petition expires, ie. ninety days after the court of appeals judgment becomes final. *Clay v. United States,* 527 U.S. 522, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003); *Kaufmann v. United States,* 282 F.3d 1336, 1338 (11th Cir. 2002). In this case, the parties do not dispute that in order to have been timely filed, defendant must have filed his motion on or before June 1, 2010. The goal of the evidentiary hearing was to resolve the discrepancy between the certificate of service dated April 13, 2010, and the June 7, 2010 postmark on the envelope carrying defendant's motion.

The defendant was an intelligent and articulate witness. His detailed testimony about the time and effort he put into preparing his § 2255 has some persuasive value with respect to his intent to timely file the motion. However, his demeanor and the form of his answers changed markedly during questioning about the specifics of how and when the motion was signed and filed. He was hesitant and seemed evasive. He ultimately admitted on at least two occasions, however, that the date in the certificate of service was false, despite his previous sworn statements to the contrary. Defendant's attempt to excuse this misrepresentation by saying that the certificate of service was not the last page he printed in the motion is nonsensical. There is no reason for the form bearing an incorrect date. The typed

portion of the declaration and certificate of service both bore the date of "April, 2010" and included a space in which to write the specific day. Regardless of when the form was printed, defendant could have inserted the accurate date at the time of mailing, striking out the word "April," if appropriate. Instead, defendant handwrote "13th" in each space and signed his name in three places.

The court does not find credible defendant's claim that he did not know that he could send "legal mail" during lockdown. His initial decision not to testify coupled with his unwillingness or inability to directly and unequivocally state under oath that he presented the motion to prison authorities for mailing on the date it was signed or to convincingly describe the circumstances under which he did so renders his credibility extremely suspect. The defense's attack on the government's failure to introduce prison logs to show when the document was mailed ignores the fact that it was defendant's choice to mail the document in such a way that it was not recorded on any prison log. Defendant previously used certified mail to send communication to the court regarding transcripts. If defies reason to suggest that he would not have taken the same precaution with respect to his § 2255 motion or at least verified that it had been received by the court. Defense counsel argued that there was nothing to show that the motion was not timely filed. The circumstantial evidence presented by the government's witnesses about when the motion had to have been presented to prison authorities for mailing was far more convincing that the defendant's admittedly perjured statement about when he signed the declaration on the § 2255 motion.

Unless defendant establishes his entitlement to equitable tolling, his motion is time barred. *Jones v. United States*, 304 F.3d 1035, 1038 (11th Cir. 2002) (citing *Akins v. United States*, 204 F.3d 1086, 1089 (11th Cir. 2000)). Equitable tolling is appropriate when a § 2255 motion is untimely because of "extraordinary circumstances that are both beyond [the defendant's] control and unavoidable even with diligence." *Johnson v. United States*, 340 F.3d 1219, 1226 (11th Cir. 2003) (citing *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1286 (11th Cir. 2002); *Sandvik v. United States*,

177 F.3d 1269, 1271 (11th Cir. 1999)). It only applies in "truly extraordinary circumstances." *Johnson*, 340 F.3d at 1226 (citing *Jones v. United States*, 304 F.3d 1035, 1039-40; *Drew*, 297 F.3d at 1286). The onus is on the defendant to show that he is entitled to this extraordinary relief. *Johnson*, 340 F.3d at 1226, *Jones,* 304 F.3d at 1040. The court will not relieve a petitioner who has sat upon his rights. *United States v. Cicero*, 214 F.3d 199, 203 (D.C. Cir. 2000) (citing *Coleman v. Johnson*, 184 F.3d 398, 402-03 (5th Cir. 1999)); see also *United States v. Cicero*, 214 F.3d 199, 203 (D.C. Cir. 2000) ("ignorance of the law or unfamiliarity with the legal process will not excuse his untimely filing, nor will a lack of representation during the applicable filing period"); *Gibson v. Klinger,* 232 F.3d 799, 808 (10th Cir. 2000). See *Cross-Bey v. Gammon*, 322 F.3d 1012, 1015 (8th Cir. 2003) ("[E]ven in the case of an unrepresented prisoner alleging a lack of legal knowledge or legal resources, equitable tolling has not been warranted." (quotation marks omitted)); *United States v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2002) ("[A] petitioner's own ignorance or mistake does not warrant equitable tolling...."); *Delaney v. Matesanz*, 264 F.3d 7, 15 (1st Cir. 2001) (rejecting the argument that a pro se prisoner's ignorance of the law warranted equitable tolling); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (same). As noted by this court at the evidentiary hearing, under the "unclean hands" doctrine, "he who comes into equity must come with clean hands." *Precision Instrument Mfg Co. V. Automotive Maint. Mach. Co.,* 324 U.S. 806, 814-815 (1945). The court finds no basis for equitable tolling in light of the defendant's lack of candor with the court and his admitted falsification of the date on which he signed the declaration and certificate of service.

Accordingly, it is respectfully RECOMMENDED:

The government's motion to dismiss (doc. 257) be GRANTED and that the defendant's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (doc. 246) be DISMISSED as untimely.

At Pensacola, Florida, this 22nd day of March, 2011.


/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).